**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-29-10

**JOHN OLIVERI,**

                    **Petitioner,**

              **- against -**

**THE STATE OF NEW YORK,**

                    **Respondent.**

**REPORT AND**
**RECOMMENDATION**

**07 Civ. 8262 (CM) (RLE)**

**To the HONORABLE COLLEEN MCMAHON, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* Petitioner John Oliveri, incarcerated at Woodbourne Correctional Facility, has filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petition was received by the *Pro Se* Office in this District on August 22, 2007. On January 17, 2003, after a jury trial, Oliveri was found guilty of one count of manslaughter in the first degree. N.Y. PENAL LAW §125.20[1], and was sentenced to a determinate term of fifteen years incarceration on March 17, 2003.

Oliveri contends that his incarceration violates the United States Constitution because (1) he received ineffective assistance of counsel; (2) his case should have been severed from his codefendants' cases; (3) the court improperly sustained objections in favor of the prosecution during trial; (4) over defense's objections, the court erred in instructing the jury on the lesser-included offense of first-degree manslaughter; (5) the prosecution improperly bolstered witnesses during summation; (6) the verdict was defective because the jury announced a charge of second-degree manslaughter, which was not submitted to them; (7) the prosecution tampered with a witness; (8) the court unjustifiably granted the prosecution's cause challenge during *voir*

*dire*; and (9) the court forced him to stand trial wearing neon-orange, prison-issued shoes. For the reasons set forth below, I recommend that this Petition be **DENIED.**

## II. BACKGROUND

### A. Factual Background

#### 1. The Crime

On January 6, 2001, Oliveri, his brother Adam Oliveri ("Adam"), and Nicholas Pisciotta, entered the after-hours social club, Silver Gate. Soon after their arrival, Oliveri and Adam pulled out firearms and ordered everyone present to leave the club. (Resp's Mem. of Law in Opp'n to Pet.'s Mot. for Habeas Corpus ("Opp'n Mem."), Ex. 3 at 6, Oct. 24, 2008.) Adam beat the owner of the social club, Jose Salgado, to the floor with his gun. Oliveri, Adam, and Pisciotta began kicking the victim and threw a piece of wood at him as he struggled on the floor. (*Id.* at 7.) "Adam then leaned down, grabbed Salgado's shirt and jacket with one hand, and fired one shot into Salgado's side." (*Id.*) A second shot was fired, but none of the witnesses saw who fired that shot. (*Id.*) Bullet fragments discovered at the scene of the crime, however, were consistent with the automatic weapon that Oliveri was allegedly carrying that night. (*Id* at 9.) Salgado died from the bullet wounds. (*Id.* at 8.)

#### 2. The Trial

Trial began in December 2002. (Opp'n Mem., Ex. 1, at 5.) During jury selection, a prospective juror declared that because of a negative personal history with police officers, he respected sanitation workers more than police officers. (*Id.*) The trial judge granted the prosecution's cause challenge of the prospective juror because his comments about police officers were "flip." (*Id.* at 7.)

2

During the first four days of trial, Oliveri was in court wearing neon-orange prison-issued shoes. (Trial Transcript ("Tr.") at 1062.) After the first full day of trial had already passed, Oliveri's defense counsel objected, and declared that the shoes would indicate that Oliveri was in custody. (*Id.*)  Defense counsel obtained four separate orders from the court directing the Department of Corrections ("DOCS") to allow Oliveri to wear non-prison issue clothing and shoes. (Opp'n Mem., Ex. 1at 18.)  None of these orders and attempts at delivering new shoes to Oliveri were successful, as prison guards refused to accept the deliveries outside of visiting hours or at times when Oliveri was not present. (*Id.* at 19.)

During summation, the prosecutor asserted that prosecution witnesses were being put on trial by the defense, saying,:

> Their lifestyle was being put on trial before you . . . And I submit to you that their lifestyle is not on trial. Sure it affects their credibility and I'm not going to tell you not to take it into account, but they're not on trial . . . Take into account their lifestyles as far as their credibility, but remember we're not here to judge their lifestyle or condone it. For that matter, any of the lifestyles of these three defendants who associated with them, whether they hung out in after-hour clubs, whether they drank or they had criminal records.

(Tr. 3417-18.) Oliveri understood this comment to suggest that he had a criminal record. He objected to this comment and requested a mistrial. (*Id.* at 20) The court denied the mistrial motion because the prosecutor's reference was to lifestyle and only conjectured as to the possibility of a criminal record, but instructed the jury to disregard the prosecutor's comment regarding a possible criminal record. (*Id.*)

Also during summation, the prosecutor asserted that prosecution witnesses "were telling . . . the truth." (*Id.* at 22.) Objections that the prosecutor was improperly bolstering the government's witnesses were sustained, but the prosecutor continued to vouch for the witnesses'

credibility. Despite continuous objections, the prosecution defended his witnesses' credibility with phrases such as, "Norma and Harry told the authorities what really happened," and "he was being honest." (*Id.*) The court acknowledged "that there was quite a bit of vouching going on," (*Id.*) and promptly issued curative instructions. (*Id.*)

### 3. The Sentencing Hearing

Each defendant had been charged with second degree murder, and in the alternate, first degree manslaughter. (*Id.* at 19). The jury submitted three separate verdicts for the three codefendants. (*Id.* at 23.) After returning a verdict of not guilty for second degree murder, the trial record reflected that the jury was asked for its verdict on the charge of second degree manslaughter, rather than first degree. (*Id.*) The trial court eventually resettled the record to reflect that the court clerk had in fact asked the jury for its verdict on manslaughter in the first degree, (Decl. of Noah J. Chamoy ("Chamoy Decl.") ¶ 10, Oct. 24, 2008), and Oliveri was convicted on that charge. (*Id.* ¶¶ 6-7.)

## B. Procedural Background

Oliveri appealed his conviction to the Appellate Division in May 2005. *People v. Oliveri*, 29 A.D.3d 330 (1st Dept. 2006). On appeal, he alleged that (1) the court erred in instructing the jury on the lesser included and non-supported charge of first degree manslaughter; (2) the court erred in granting the prosecution's cause challenge; (3) the prosecution improperly communicated with a witness about her testimony; (4) the prosecution submitted the second degree manslaughter charge instead of first degree manslaughter; (5) the prosecution committed misconduct during summation; and (6) the prosecution deprived Oliveri of a fair trial by forcing him wear identifiable neon-orange prison-issue shoes. (Opp'n Mem., Ex. 1.) The judgment

4

against Oliveri was affirmed on May 4, 2006. (Chamoy Decl., ¶ 12.) His application seeking

leave to the Court of Appeals was denied on July 28, 2006. *People v. Oliveri*, 7 N.Y.3d 792

(2006) (Ciparick, J.).

On July 27, 2007, Oliveri, acting *pro se*, filed a § 440.10 motion to vacate his conviction

in the Supreme Court, Bronx County. (Chamoy Decl. ¶ 16.) In his § 440.10 motion, Oliveri

argued that (1) his attorney had a conflict of interest; (2) his attorney had "mental infirmities;"

(3) the court improperly denied his motion for severance; (4) the court improperly sustained the

prosecution's objections; (5) there was a defective verdict because the court submitted first

degree manslaughter over defense objections; (6) the prosecution improperly bolstered

witnesses; and (7) that the jury instructions improperly shifted the burden of proof to the

defendant. (*Id.* ¶ 19.) Oliveri's § 440.10 motion was denied by the court without a hearing on

February 5, 2008. (Opp'n Mem., Ex. 10.)

### III. DISCUSSION

#### A. Threshold Issues

##### 1. Timeliness

A petitioner must file an application for a writ of habeas corpus within one year of the

finalization of his conviction. 28 U.S.C. § 2244(d)(1). A conviction becomes final "when [the]

time to seek direct review in the United States Supreme Court by writ of certiorari expires;" that

is, where certiorari is not sought, ninety days after final determination by the state court.

*Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (quoting *Ross v. Artuz*, 150 F.3d 97, 98 (2d

Cir. 1998)). The one-year period will toll while collateral state court relief is pending. 28 U.S.C.

§ 2244(d)(2). On July 28, 2006, Oliveri's application seeking leave to appeal to the Court of

5

Appeals was denied, and accordingly, his conviction became final on October 26, 2006. The *Pro Se* Office in this District received Oliveri's petition on August 22, 2007, and therefore his petition is timely.

### 2. Exhaustion

Pursuant to 28 U.S.C. § 2254(b), a petitioner must exhaust his Constitutional claims in state court before proceeding with them to federal court. 28 U.S.C. § 2254(b)(1)(A). There are two prongs to this requirement. To satisfy the procedural prong, a petitioner must have utilized all available avenues of appellate review within the state court system. *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994). To satisfy the substantive prong, a petitioner's claims in state court must have been raised in federal law or constitutional terms. *Jones v. Vacco*, 126 F.3d 408, 413-14 (2d Cir. 1997) (citing *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 192 (2d Cir. 1982)). Although not an exacting standard, to satisfy the substantive prong a petitioner must have informed the state courts of "both the factual and the legal premises of the claim he asserts in federal court." (*Id.* at 413.)

### a. Oliveri's Severance Claim

Oliveri's claim that the court wrongly denied his motion to sever and to empanel multiple juries is unexhausted because he never alerted the state court to the federal constitutional nature of this claim, and cited only state law cases with no federal dimensions in support of the claim. (Opp'n Mem. Ex. 8, 15-17.) He made broad allegations that his state and federal constitutional rights were violated; but did not "adequately [alert] the state appellate court to the constitutional dimensions" of the manner in which his rights were breached. *See Jones*, 126 F.3d at 414. Accordingly, this claim is unexhausted.

6

### b. Oliveri's Claim of Improper Trial Objections

Oliveri first raised his claim that the court improperly sustained 181 objections by the government in his § 440.10 motion. According to Oliveri, sustaining this many objections "is excessive and show[s] a predisposition against the defendants." (Opp'n Mem. Ex. 8 at 19.) This claim is also unexhausted as Oliveri failed to assert any federal grounds for finding that the trial court's actions violated his rights. (*Id.*)

### c. Oliveri's Improper Jury Instructions Claim

In his appeal to the Appellate Division and in the instant Petition, Oliveri argued that the trial court erred by instructing the jury on the lesser included charge of manslaughter in the first degree, by failing to submit the charge of manslaughter in the second degree, and by shifting the burden of proof to him. The first of these subclaims is unexhausted. In his appeal, Oliveri raised only state law arguments in support of his contention that the first-degree manslaughter charge was improperly submitted to the jury. (*See* Opp'n Mem., Ex. 10 at 28-36.) In his habeas petition, Oliveri continues to reference only state law in support of this claim. (Pet.'s Writ 46-47, August 22, 2007.) The Appellate Division addressed Oliveri's jury instructions claim as a matter of state law, finding that "the trial court properly submitted first-degree manslaughter as a lesser included offense of intentional murder. There was a reasonable view of the evidence that defendants only intended to cause serious physical injury to the victim, given that the shooting occurred during a heated struggle, while the victim was moving and fighting back, and that the victim received a single gunshot wound, under the armpit." *People v. Oliveri*, 29 A.D.3d 330, 331 (1st Dept. 2006). Except for a vague citation to the Fourteenth Amendment, (Opp'n Mem. Ex. 1 at 36,) Oliveri has failed to present a federal claim to the state appellate court or to this

Court. The state cases that he relied on do not cite federal law or federal principles in their analyses. *Cf. Daye*, 696 F. 2d at 193-94. As a result, Oliveri failed to fairly present a federal claim related to the jury charge to the state courts, and this subclaim is thus unexhausted.

Accordingly, Claims Two and Three, as well as Oliveri's subclaim relating to the first-degree manslaughter charge, are not exhausted.

### 3. Procedural Bar

A claim is procedurally barred and precluded from habeas review if (1) the state court declined to address the petitioner's federal claim because petitioner failed to meet a state procedural requirement and (2) the state court decision rested on an independent and adequate state ground. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Jones*, 126 F.3d at 414 (citing *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994)). A state law ground is "adequate" if "the state's insistence on compliance with its procedural rule serves a legitimate state interest." *Wainwright v. Sykes*, 433 U.S. 72, 83 n.8 (1977) (quoting *Henry v. Mississippi*, 379 U.S. 443, 447 (1965)). "The Second Circuit has recognized that New York's preservation rule typically constitutes an independent and adequate state procedural ground on which the Appellate Division may deny a criminal defendant's appeal." *Kemp v. New York*, No. 07 Civ. 6996 (RMB)(HBP), 2009 WL 306258, at *9 (S.D.N.Y. Feb 9, 2009) (referencing *Garcia v. Lewis*, 188 F.3d 71 (2d Cir. 1999); *Clark v. Perez*, 510 F.3d 382 (2d Cir. 2008); *Richardson v. Greene*, 497 F.3d 212 (2d Cir. 2007)). A petitioner can overcome this procedural bar if he can show cause for the default and actual prejudice, or "demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750 (internal citations and quotations omitted).

a. Oliveri's Ineffective Assistance of Counsel Claims

Oliveri claims that his trial attorney was ineffective because he (1) had a conflict of interest; (2) has Attention Deficit Hyperactivity Disorder ("ADHD") which led to him failing to properly raise an issue before the court; and (3) did not let him testify at trial.

Oliveri first raised his conflict of interest and failure to testify subclaims in his § 440.10 motion. The court ruled that these issues were unpreserved, because there were sufficient facts in the trial record to support appellate review of the issues, but Oliveri failed to raise them in his state court appeal. (Opp'n Mem., Ex. 10 at 3.) Since Oliveri has failed to show that there was a fundamental miscarriage of justice related to the preclusion of his claim, this subclaim is procedurally barred.

Oliveri's only evidence in support of his claim based on his attorney's ADHD were his own assertions and a set of unanswered interrogatories that he had sent to his trial attorney. The trial court considering Oliveri's § 440.10 motion found that this evidence did not constitute adequate factual support for this claim under CPL § 440.30(4). This finding constitutes an independent and adequate state law ground barring habeas review. *See, e.g., Marsh v. Ricks*, 02 Civ. 3449(NRB), 2003 WL 145564, at *7 (S.D.N.Y. Jan. 17, 2003); *Roberts v. Scully*, 875 F. Supp. 182, 193 n. 7 (S.D.N.Y. 2001); *Shaw v. Artuz*, 99 Civ. 9754(JSM)(RLE), 2001 WL 1301735, at *4 (S.D.N.Y. Oct. 19, 2001). Accordingly, Oliveri's ineffective assistance of counsel claim is procedurally barred in its entirety.

b. Oliveri's Trial Objections Claim

Oliveri's claim that the court improperly sustained 181 objections against him is also procedurally barred because the claim was found to be precluded by the trial court considering

9

his § 440.10 motion. (Opp'n Mem., Ex. 10.) The court's finding of preclusion constitutes an

independent state bar. *See Clark v. Perez*, 510 F.3d 382, 391 n.3 (2d Cir. 2008). The application

of CPL § 440.10(2)(c) for matters appearing in the record also constitutes an adequate state bar.

*Id.*; *Murden v. Artuz*, 497 F.3d 179, 196-97 (2d Cir. 2007). The failure to include a record-based

claim on direct appeal constitutes "total noncompliance with the requirement that issues arising

from the face of the trial record be raised by direct appeal." *Clark*, 510 F.3d at 391 n.4. Oliveri

has failed to show that there was a fundamental miscarriage of justice, and therefore this claim is

procedurally barred.

c. Oliveri's Improper Jury Instructions Claims

Oliveri's claim regarding the instructions given to the jury contains three distinct

subclaims: 1) that the charge of first-degree manslaughter was improperly submitted; 2) that the

charge of manslaughter in the second degree should have been submitted; and 3) that the court's

instructions unfairly shifted the burden of proof to him. The trial court considered these claims in

Oliveri's § 440.10 motion. Subclaim one had been raised before the Appellate Division, and

therefore the trial court refused to consider it as a part of the § 440.10 proceeding. (Opp'n Mem.,

Ex. 10 at 2.) As with most of Oliveri's ineffective assistance of counsel claims, the § 440.10

court found that there was adequate evidence on the record to permit appellate review of the

second and third subclaims, but that Oliveri had failed to raise them at the appellate level, and

the claims were precluded. Therefore, Oliveri's second and third subclaims relating to the

improper jury instructions are procedurally barred. As Oliveri's first subclaim on this matter was

unexhausted, the entire claim is barred from federal review.

10

d. Oliveri's Witness Tampering Claim

The Appellate Division explicitly denied Oliveri's witness tampering claim on independent state grounds. The Court held that "by failing to submit a proper motion, as directed by the court, [Oliveri] abandoned [his] claim" that "an employee of the prosecutor had an improper conference with a witness during cross examination." *Oliveri*, 29 A.D.3d at 331. Oliveri has not shown there was actual prejudice committed against him, nor that there was a fundamental miscarriage of justice. The claim is procedurally barred.

e. Oliveri's Claim Regarding Prison-Issue Shoes

The Appellate Division found that Oliveri's claim regarding prison issue shoes  was waived at trial. *Oliveri*, 29 A.D.3d at 331-32. In New York, stating "objection" without any further explanation is not sufficient to preserve an issue for review at the appellate level. *See People v. Balls*, 69 N.Y.2d 641 (1986); *People v. Fleming*, 70 N.Y.2d 947 (1986). If an attorney's objections are sustained, but the attorney fails to request curative instructions or move for a mistrial, then the attorney has failed to preserve the issue. *See People v. Medina*, 53 N.Y.2d 951 (1981); *Jodhan v. Ercole*, 07 Civ. 9263(RMB)(JCF), 2008 WL 819311 *5 (S.D.N.Y., March 28, 2008); *O'Henry v. Superintendent Watertown Correctional Facility*, 05-CV-4752 (DLI)(LB), 2007 WL 2126094 *6 (E.D.N.Y., July 24, 2007); *People v. Santiago*, 52 N.Y.2d 865 (1981).

While Oliveri's attorney did object to the shoes that Oliveri was wearing, he failed to do so until after the trial had been proceeding for a full day. *Oliveri*, 29 A.D.3d at 331-32. Further, Oliveri's attorney failed to request any curative instructions or move for a mistrial. *Id.* As a result, this claim is procedurally barred as unpreserved.

Accordingly, claims Three, Seven, and Nine and parts of claims One and Four are

procedurally barred from federal review.

**B. Merits of Claims**

### 1. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, to issue a writ the federal court must find that the "decision…was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### 2. Claim 1: Ineffective Assistance of Counsel

#### a. Conflict of Interest

The mere "possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). A petitioner must establish that "an actual conflict of interest adversely affected his lawyer's performance." *Id.* An attorney has a conflict of interest when, during the course of the representation, the attorney's and defendant's interests "diverge

with respect to a material, factual, or legal issue or to a course of action." *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993) (citing *Cuyler*, 446 U.S. at 356 n.3). The defendant need not establish prejudice as required under *Strickland*; an actual conflict of interest is enough. *See Narvaez v. United States*, 97 Civ. 8745(SS), 1998 WL 255429 at *3 (S.D.N.Y. May 19, 1998).

Oliveri claims that his attorney, Robert Tudisco, "never informed him that there was a conflict of interest because of [Tudisco's] representation of [Oliveri's] brother Adam, and thus [had] divided loyalty in the instant case." (Pet.'s Writ at 3.) He argues that this divided loyalty "demonstrates that defense counsel Tudisco labored under an actual conflict in his representation of both the Petitioner and his former client." (*Id.* at 5.) Oliveri maintains that if Adam had been a witness, Tudisco would have had to cross-examine a former client, which would have caused divided loyalties. (Pet.'s Writ at 7) (citing *Lightbourne v. Dugger*, 829 F.2d 1012, 1023 (11th Cir. 1987). Oliveri argues that Tudisco was obligated to apply for mandatory withdrawal under the American Bar Association Code DR2-110(B). (Pet.'s Writ at 9.) He declares that Tudisco's failure to withdraw is "a violation of an ethical obligation [which] gives rise to a conflict of interest." (*Id.*) He argues that this uncured conflict violated his rights under the Sixth and Fourteenth Amendments of the United States Constitution, that Tudisco was ineffective, that the court committed reversible error, and that his sentence and conviction should be set aside, and he should be granted a new trial.

As the record indicates, Oliveri's counsel discussed the possibility of a conflict as soon as Adam Oliveri became involved in the case. At the time of the trial, all parties agreed that Oliveri's counsel should continue to represent him. (Opp'n Mem., Ex. 9, ¶ 13.) On November 15, 2002, Oliveri's counsel stated:

13

> I wanted the Court to be aware that my client has known, since the beginning of the case, I, in fact, represented Adam Oliveri on the prior case in Westchester County. It was a state case. His parents were aware of this when they retained me to represent [petitioner]. I do not believe that their defenses in this case in any way clash with each other.

(Tr. at 58.) There is no constitutional or federal legal mandate that a trial court inquire into the possibility of a conflict of interest on the part of a defense attorney when they become aware that counsel represented a co-defendant on a previous matter. *Mickens v. Taylor*, 535 U.S. 162, 175 (2002). Here, Oliveri's claim that he did not know of a potential conflict of interest is disproved by the record, and the trial court made a rational determination that there was no significant conflict. Consequently, I recommend that this claim be **DENIED**.

    b. Oliveri's Other Ineffective Assistance of Counsel Claims

    Generally, to prevail on a claim that assistance of counsel was constitutionally ineffective, a petitioner must satisfy the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. The proper standard for attorney performance is that of reasonableness under prevailing professional norms and circumstances. *Id.* at 689. Second, the petitioner "must show that the deficient performance prejudiced the defense." *Id.* at 687. This requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Consideration must also be given to counsel's overall performance; otherwise, it would be too simple to prove that an attorney's specific act or omission was proof of ineffective assistance. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986).

Oliveri claims ineffective assistance of counsel because Tudisco "refused to allow [him] to take the stand in his own defense." (Pet.'s Writ at 43.) He also argues that Tudisco had a mandatory duty under the ABA Model Rules of Professional Conduct to withdraw from representation because of his mental condition. (*Id.* at 13.) Oliveri alleges that Tudisco suffers from ADHD, and, as a result, failed to effectively pursue the possibility that the prosecutor may have improperly communicated with a witness during a break in the witness's testimony. (*Id.*) Oliveri also maintains that he did not know Tudisco suffered from ADHD until June 2007, and that counsel had a duty to disclose that information. (*Id.* at 38-40.)

The record shows that Oliveri agreed to not testify. Oliveri's counsel states "after careful consideration of all the evidence that's been before the jury, discussion with my client, his family, and everyone, *we are all in agreement* that we will not be putting on a case or calling witnesses." (Tr. at 3151) (emphasis added.) Oliveri does not explain how Tudisco impeded his right to testify. A defendant has not established an ineffective assistance of counsel claim when he provides an unsubstantiated assertion that counsel refused him the right to testify. *United States v. DeFeo,* No. 90 Cr. 250, 1997 WL 3259, at * 14 (S.D.N.Y. Jan. 6, 1997).

Oliveri has offered no proof that Tudisco's medical condition had a detrimental impact on the quality of his representation. (*See* Opp'n Mem., Ex. 10 at 4.) His only allegation concerning Tudisco's ineffectiveness is the submission of a letter when Tudisco should have submitted a written motion. (*Id.*) Based on this assertion alone, it is unclear how ADHD affected Tudisco's ability to represent Oliveri. Contrary to Oliveri's allegations of counsel's inability to effectively represent him, it appears that Tudisco showed competence as an attorney. Oliveri's claim that he received ineffective assistance of counsel, and his request to secure related

15

affidavits should be **DENIED**.

### 3. Claim 2: Oliveri's Claim That His Trial Should Have Been Severed From That of the Other Defendants

Oliveri argues that the court improperly denied his motion for severance of his trial from that of his co-defendants. "A defendant seeking to overturn a denial of a severance motion, must show that he was so severely prejudiced by the joinder as to have been denied a fair trial, not that he might have had a better chance for acquittal at a separate trial." *Grant v. Hoke*, 921 F.2d 28, 31 (2d Cir. 1990) (quoting *United States v. Burke*, 700 F.2d 70, 83 (2d Cir)). A joint trial is fundamentally unfair where codefendants present mutually antagonistic defenses. "[A] simple showing of some antagonism between defendants' theories of defense does not require severance." *Id.* (quoting *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir. 1984). Oliveri has not provided this Court with any facts showing that there was any antagonism between him and his co-defendants. There are simply no facts from which the Court might interpret antagonism or fundamental unfairness because of the denial of Oliveri's motion for severance. This claim should be **DENIED** on the merits.

### 4. Claim 3: Oliveri's Claim Regarding Improper Sustaining of Trial Objections

There is no Constitutional right to be protected from objections or having those objections sustained. There is no indication from Oliveri, and no rationale that this Court can ascertain, which would frame this issue in a federally cognizable way. This claim is meritless, non-cognizable, and should be **DENIED**.

### 5. Claim 4: Oliveri's Claim of Improper Jury Instructions

Oliveri asserts that his conviction for first-degree manslaughter must be reversed because of the alleged improper jury charge. (Pet.'s Writ at 46-47.) He argues that the trial court violated

16

his rights by expanding the possible theories of the crime available to the prosecutor, and failing to give the jury the possibility of finding that a lesser crime had been committed. (*Id.*) "The decision of whether there is enough evidence to justify a lesser included offense charge rests within the sound discretion of the trial judge," *United States v. Chapman*, 615 F.2d 1294, 1298 (10th Cir., 1980), and the Second Circuit has not held that a trial court's decision whether to submit a lesser-included offense in a non-capital case implicates a federal constitutional right. *Cf. Rice v. Hoke*, 846 F.2d 160, 164 (2d Cir. 1998); *Jones v. Hoffman*, 86 F.3d 46 (2d Cir. 1996). Several other circuits have come to the same conclusion. *See United States v. Begay*, 833 F.2d 900, 901-02 (10th Cir. 1987) (analyzing a decision to instruct the jury on a lesser-included offense for abuse of discretion on direct appeal); *United States v. Iron Shield*, 697 F.2d 845 (8th Cir. 1983).

The Appellate Division unanimously affirmed Oliveri's convictions, and stated that submission of first-degree manslaughter as a lesser included offense of intentional murder is proper. *Oliveri*, 29 A.D.3d at 331. This Court agrees that Oliveri did not suffer a deprivation of his constitutional rights when the court submitted a lesser included offense, even over his objections. The jury was properly instructed that they had to consider the second-degree murder charge before turning to the manslaughter instruction, and that they had to find defendants guilty of first-degree manslaughter beyond a reasonable doubt. (Tr. 3465-68.) There is no indication that Oliveri's conviction was made more likely by the first-degree manslaughter charge. *See Rice*, 846 F. 2d at 164. Therefore, Oliveri's claim that the submission of manslaughter in the first degree violated his federal constitutional rights should be **DENIED.**

### 6. Claim 5: Oliveri's Improper Summation Claim

Oliveri argues that the prosecution built the foundation of its case on unbelievable witnesses, and attempted to make them reputable sources of information by vouching for their credibility in his summation. (Pet.'s Writ at 22.) However, "inappropriate comments by the prosecution alone do not permit a reviewing court to overturn a criminal conviction which was obtained in an otherwise just proceeding." *United States v. Young*, 470 U.S. 1, 11 (1985). It "is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986.) A petitioner must show that the prosecution's alleged misconduct permeated the trial. *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990).

A court determining the propriety of prosecutorial comments must examine, "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *Id.* (internal quotations omitted). In this case, the prosecution's attempts to bolster witnesses did not rise to a level of constitutional impropriety. Taken in the context of the defense's many attacks on prosecution witnesses, including references to government witnesses as "paid actors" (Tr. 3221), and rhetorical questions like "[d]on't you got to say this guy is lying to us?" (Tr. 3316), the prosecutor's comments can be considered to be "invited." *See Young*, 470 U.S. at 11-13. Further, the trial court took fair curative measures by sustaining defense objections to certain prosecution statements. (Tr. 3404-05.) It also does not seem that the comments cited were of crucial importance to Oliveri's conviction. As a result, the prosecutor's bolstering of his witnesses does not support a grant of habeas corpus.

Oliveri also contends that the prosecutor improperly disparaged the defendants during his summation, by suggesting that the defense was less than honest and had attempted to

18

mislead the jury. (Pet.'s Writ at 23.) Federal precedent supports finding that such comments are

acceptable when they represent "an attempt to focus the jury's attention upon the evidence and

away from defense counsel's claims." *United States v. Rivera*, 971 F. 2d 876, 883 (2d Cir. 1999).

In the instant case, defense attorneys tried a number of times to advance alternate theories of the

case, including emphasizing the importance of narcotics found at the crime scene, and

suggesting that there was a police cover-up associated with the drugs. (*See, e.g.*, Tr. 818-29, 916-

17.) Under these circumstances, the prosecutions remarks were not sufficiently inappropriate to

rise to the level of a constitutional violation. *See Rivera*, 971 F.2d at 883; *United States v. Millar*,

79 F. 3d 338, 343-44 (2d Cir. 1996). Once, this subclaim does not support a grant of Oliveri's

motion.

Next, Oliveri contends that the prosecutor wrongly implied to the jury that Oliveri has a

criminal record. In asserting that prosecution witnesses were put on trial by the defense, the

prosecutor stated:

> Their lifestyle was being put on trial before you . . . And I submit to you that their
> lifestyle is not on trial. Sure it affects their credibility and I'm not going to tell
> you not to take it into account, but they're not on trial . . . Take into account their
> lifestyles as far as their credibility, but remember we're not here to judge their
> lifestyle or condone it. For that matter, any of the lifestyles of these three
> defendants who associated with them, whether they hung out in after-hour clubs,
> whether they drank or they had criminal records.

(Tr. 3417-18.) The prosecutor's remarks were somewhat ambiguous, and on a certain reading

may seem to imply the possibility that Oliveri had a criminal record. However, "a court should

not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging

meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the

plethora of less damaging interpretations." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974).

19

It is not possible to interpret this statement as an attempt to "inflame [the jury's] passion by accusing Mr. Oliveri of having a criminal record," as Petitioner contends. (Pet.'s Writ at 48.) This ambiguous statement does not provide sufficient evidence of a violation of Oliveri's rights to justify granting a writ of habeas corpus.

Finally, Oliveri argues that the prosecutor improperly introduced facts outside of the record in his summation. The challenged statement was an assertion that the motivation for the murder may have been the relationship between Oliveri's co-defendant, Nicholas Pisciotta, and the deceased's girlfriend. (*Id.*) This suggestion, however, had some support in the record. Evidence had been introduced indicating that defendants blamed a woman for the altercation at issue (Tr. 1619), and that Pisciotta had exhibited a grudge against the victim the day before the shooting. (Tr. 2416-17.) "[T]he Government "has broad latitude in the inferences it may reasonably suggest to the jury during summation," *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005), and the challenged conjecture does not appear to be completely unsupported. *See also United States v. Nersesian*, 824 F.2d 1294, 1328-29 (2d Cir. 1987).  Thus, this subclaim too does not justify granting Oliveri's Petition, and Oliveri's claim relating to the prosecutor's summation as a whole should be **DENIED**.

### 7. Claim 6: Oliveri's Defective Verdict Claim

Oliveri contends that the jury rendered a defective verdict because they announced his guilt to second-degree manslaughter, a charge not submitted to them, and, accordingly, his conviction for first-degree manslaughter should be reversed. There is no federal constitutional right to a state criminal appeal of trial court errors. *Halbert v. Michigan*, 545 U.S. 605, 610 (2005). However, when a state offers criminal defendants the right to appeal their convictions,

the procedures used must comport with due process. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985).

At trial, the court submitted to the jury one count of murder in the second degree, one count of manslaughter in the first degree, and one count of assault in the second degree. (Opp'n Mem., Ex. 3 at 48.) According to the original trial transcript, when the clerk of court asked the jury for their verdict, they stated manslaughter in the second degree instead of manslaughter in the first degree. (*Id.*) The clerk then recorded the verdict aloud as manslaughter in the first degree. (*Id.*) On March 10, 2006, the transcript was settled by the trial court. (*Id.* at 49.) The record, as settled, reflects that the clerk asked the jury for their verdict on manslaughter in the first degree as to Oliveri. (*Id.*) Since the clerk verbally confirmed a conviction for manslaughter in the first degree, and the jury did not object, there can not be a showing of prejudice to Oliveri. Moreover, the verdict sheet filled out by the jurors indicated that they convicted Oliveri of manslaughter in the first degree. Finally, the trial judge settled the error on March 10, 2006. It appears that any alleged defect is nothing more than a clerical error that was settled by the trial court.

Oliveri also contends that the trial judge should not act as witness since the judge relied on her own recollection to settle the record. However, there is no federal constitutional right to confront the trial judge as a witness against the accused in a reconstruction hearing. *See People v. Alomar*, 93 N.Y.2d 239, 247 (1999). Reconstruction judges do not testify as witnesses, but instead reconstruct what took place at trial. *Id.* Judges are often called upon to hold reconstruction hearings concerning issues that happened at trial. *See Jones v. West*, 555 F.3d 90, 102 (2d Cir. 2009); *Valentine v. New York*, 252 Fed. Appx. 388 (2d Cir. 2007). Federal courts have routinely found that the resettlement procedures used in New York comport with due

21

process. *See, e.g., Shire v. Costello*, 2008 WL 2323379 at *7 (N.D.N.Y. June 2, 2008); *Curro v. Watson*, 884 F. Supp. 708, 718 (E.D.N.Y. 1995), *aff'd*, 100 F.3d 942 (2d Cir. 1996). There is no evidence that the proceeding in this case differed in any way from a standard reconstruction hearing. Accordingly, this claim should be **DENIED** on the merits.

### 8. Claim 7: Oliveri's Witness Tampering Claim

Oliveri argues that an alleged conversation between an employee of the Bronx District Attorney's Office and a prosecution witness during the middle of the witness's cross-examination violated his right to due process, cross-examination, and confrontation. (Pet.'s Writ at 64-65.) "[O]nce a witness takes the stand the truth-seeking function of a trial will most often be best served by requiring that the witness undergo direct questioning and cross-examination without interruption for counseling." *People v. Branch*, 83 N.Y.2d 663, 666 (1994) (citing *Perry v. Leeke*, 488 U.S. 272, 282 (1989). Oliveri alleges that the court was not permitted to exercise its discretion as to whether the conference should have been permitted or whether remedial measures should have been taken because none of the defendants knew that a mid-testimony conference had taken place. (Pet.'s Writ at 67-68.)

Oliveri cannot show cause, prejudice, or a fundamental miscarriage of justice. He has not provided any facts demonstrating that the District Attorney's employee committed an impropriety by conversing with the witness. Oliveri's claim that the conversation caused a fundamental miscarriage of justice is merely a speculative assumption. Therefore, this claim should be **DENIED** on the merits.

### 9. Claim 8: Cause Challenge During *Voir Dire*

Oliveri claims that his constitutional right to a jury of his choosing was violated by the

trial court when the prosecution's for-cause challenge to a potential juror was granted. (Pet.'s Writ at 83-84.) The Sixth and Fourteenth Amendments of the U.S. Constitution state that a defendant has the right to a trial by an impartial jury. U.S. Const. amends. VI, XIV; *Irvin v. Dowd*, 366 U.S. 717 (1960). However, if a defendant does not prove "the partiality of the jury that ultimately convicted him, he may not successfully claim deprivation of his sixth amendment or due process rights." *United States v. Towne*, 870 F.2d 880, 885 (2d Cir. 1989) (citing *United States v. Brown*, 644 F.2d 101, 104 (2d Cir. 1981)); *see also United States v. Gonzalez-Balderas*, 11 F.3d 1218, 1222 (5th Cir. 1994) ("improper removal of a member of the venire [for cause-challenge at the State's request] is not grounds for reversal in a non-capital case unless the jurors who actually sat were not impartial within the meaning of the sixth amendment"), *cert. denied*, 511 U.S. 1129 (1994).

Oliveri has failed to show any partiality on the part of the jury which ultimately convicted him. As such, he may not successfully claim deprivation of his Sixth Amendment or Due Process rights. Accordingly, this claim should be **DENIED**.

### 10. Claim 9: Oliveri's Claim Regarding His Prison-Issue Shoes

Oliveri contends that his trial was defective because he had to wear neon-orange prison issue shoes at trial. (Pet.'s Writ at 91.) An accused cannot be compelled "to go to trial in prison...clothing because of the possible impairment of the presumption [of innocence] so basic to the adversary system." *Estelle v. Williams*, 425 U.S. 501, 504 (1976). Nevertheless, there is no *per se* defect where the accused wears prison attire without objection, and therefore, "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation."

23

(*Id.* at 511-13).

Had Oliveri appropriately objected to his wearing neon-orange shoes before trial began, and requested an adjournment until he got proper attire, the court might have been able to prevent any possible prejudice. However, Oliveri failed to object until after trial had proceeded for a full day, and provides no evidence which would show that the shoes prejudiced him at his trial. This failure is sufficient to negate any possible constitutional violation.

Additionally, Oliveri waived this claim because he did not alert the court to his neon-orange prison-issue shoes until the end of the first day of trial, after the shoes had already been visible to the jury. Moreover, he never objected on constitutional grounds, never moved for a mistrial, and did not ask to adjourn the trial until proper shoes could be obtained. He also declined any curative instructions. *See Oliveri*, 29 A.D.3d at 332. Thus, this claim should be **DENIED** on the merits.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Oliveri's petition for a writ of habeas corpus be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Colleen McMahon, 500 Pearl Street, Room 640, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and*

*Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) West Supp.

1995); FED. R. CIV. P. 72, 6(a), 6(d).

DATED: December 29, 2010
New York, New York

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

**Copies of this Report and Recommendation have been sent to:**

*Pro Se* Petitioner
John Oliveri
03-A-1785
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, NY 12788-1000

Respondent
Noah J. Chamoy
Robert T. Johnson
District Attorney
Bronx County
198 East 161st Street
Bronx, NY 10451